# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE M. EDWARDS, | ) |
| | ) |
| Plaintiff, | ) No. 4:16-CV-1077 RLW |
| | ) |
| v. | ) |
| | ) |
| TOM VILLMER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' Motion for Summary Judgment (ECF No. 182). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

---

[1] Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Edwards' "Affdaivit in Opposition to Defendant's [sic] Motion for Summary Judgment" does not attempt to controvert Defendants' Statement of Uncontroverted Material Facts. Accordingly, Edwards did not meet the requirements of Local Rule 4 .01(E), and he is deemed to have admitted all facts in Defendants' statements of uncontroverted facts. *Deichmann v. Boeing Co.*, 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), *aff'd*, 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531

Plaintiff Lawrence M. Edwards ("Edwards") is an offender in the Missouri Department of Corrections ("MDOC") and is currently incarcerated at the Eastern Reception Diagnostic Correctional Center ("ERDCC"). (DSUMF, ¶1). At all times related to Edwards' Complaint, he was incarcerated at the Farmington Correctional Center ("FCC"). (DSUMF, ¶2). Defendant Wendy Dashner is employed by MDOC as a Functional Unit Manager ("FUM") at FCC. (DSUMF, ¶3). Defendant James Ford was employed by MDOC as a Corrections Officer II ("COII"), or Sergeant, at FCC. (DSUMF, ¶4).

Edwards seeks declaratory relief and compensatory damages in the amount of no less than $150,000.00 against the Defendants. (DSUMF, ¶6). Most of the claims in the amended complaint were previously dismissed by this Court. Defendants Dashner and Ford are the only remaining Defendants. (DSUMF, ¶7).

Dasher received several telephone calls from the mother of an offender where she expressed concerns for the offender's safety. (DSUMF, ¶8). The mother stated that the calls were made by a different offender. (DSUMF, ¶8). Dasher investigated the source of the telephone calls and determined that they were made by Edwards. (DSUMF, ¶9). Dashner issued a conduct violation to Edwards. (DSUMF, ¶10). Dashner reported that Edwards was in violation of Rule 12.1. (DSUMF, ¶11). Edwards was interviewed the same day and made the following statement: "I wrote to Warden Villmer because [the offender] was being threatened." (DSUMF, ¶12). On November 5, 2014, Edwards had a hearing before the Disciplinary Hearing Officer ("DHO") after an investigation into the telephone calls. (DSUMF, ¶13). The Disciplinary Action Report shows that witnesses were called and considered, and Edwards

---

U.S. 877, 121 S.Ct. 184, 148 L.Ed.2d 127; *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006).

prepared a written statement. (DSUMF, ¶14). Based upon the evidence and witness testimony, the DHO found Edwards guilty, but amended the violation from a Rule 12.1 violtion to a Rule 38.3 violation for using another offender's PIN. (DSUMF, ¶15) DHO Charles Buford and Edwards both signed the Disciplinary Action Report, and the Assistant Warden approved the recommended action. (DSUMF, ¶16).

On October 30, 2014, Edwards filed an Informal Resolution Request ("IRR"), complaining that Dashner and another officer were harassing him and retaliating against him due to filing IRRs against Dashner. (DSUMF, ¶17). Dashner responded that she was not aware that Edwards had filed any previous IRRs. (DSUMF, ¶18). Edwards' IRR was denied. (DSUMF, ¶19). On November 24, 2014, Edwards filed a grievance because the DHO had amended the violation from a Rule 12.1 violation to a Rule 38.3 violation and asserted that the accusations against him were false. (DSUMF, ¶20). The Warden denied the grievance stating, "The amending of a violation does not prove the accusation was false. You have failed to provide any additional information/evidence to support your claism FUM Dashner violated your Due Process Rights." (DSUMF, ¶21). On December 5, 2014, Edwards filed a Grievance Appeal, stating that he had an affidavit from the other offender's mother that Dasher had lied. (DSUMF, ¶22). The Deputy Division Director of the Division of Adult Institutions, Dwayne Kemper, denied the Grievance Appeal and informed Edwards that the violation would remain a part of his institutional record. (DSUMF, ¶23).

In September 2014, MDOC replaced the Prison Rape Elimination Act ("PREA") Assessment with the Adult Internal Risk Assessment ("AIRA"). (DSUMF, ¶24). On October 27, 2014, Edwards was reassessed by Correctional Manager II Baxley and his score was determined to be Alpha. (DSUMF, ¶25). All case managers were instructed to perform new

classification assessments on offenders using AIRA. (DSUMF, ¶26). Dashner did not direct anyone to reevaluate Edwards. (DSUMF, ¶27). On November 12, 2014, Edwards filed an IRR against Dashner, wherein he accused her of retaliating against him because the previous conduct violation ("CDV") was dropped for inaccurate information. (DSUMF, ¶28). The IRR response found that Edwards received due process on his CDV and was found guilty of violating Rule 38.3 and denied the IRR. (DSUMF, ¶29). On December 3, 2014, Edwards filed an Offender Grievance stating that Dashner had issued the previous CDV because "[s]he is white and I am black, which poses-cultural distances/differences, separate realities, visible/invisible barricades that places white and blacks on the opposite sides of the racial spectrum." (DSUMF, ¶30). On December 24, 2014, the Warden responded that Edwards did not present any substantial evidence that would warrant changes to the CDV. The Warden's response noted that Edwards had been hostile and rude to Dashner. (DSUMF, ¶31). On January 5, 2015, Edwards filed an offender Grievance Appeal. (DSUMF, ¶32). On February 6, 2015, Deputy Division Director Kempker denied the Grievance Appeal. (DSUMF, ¶33).

On December 11, 2014, Edwards' cell was searched by Corrections Officer I Goodson, who removed a blanket and a ball cap. (DSUMF, ¶34). On December 15, 2014, Edwards filed an IRR alleging harassment and retaliation by Ford and Dashner based on the removal of the ball cap. (DSUMF, ¶35). Correctional Officer I Goodson issued a CDV for violating Rule 24.1 for being in possession of a blue ball cap that was not on Edwards' property list. After an investigation, the CDV was dismissed and the ball cap was returned to Edwards. (DSUMF, ¶36). The IRR response did not address Edwards' allegations of retaliation. (DSUMF, ¶37). Edwards did not mention the retaliation in his Offender Grievance. (DSUMF, ¶38). Edwards did not file a Grievance Appeal. (DSUMF, ¶39). Ford issued a CDV to Edwards on December

18, 2014 for failing to report his appointment with the Grievance Officer. (DSUMF, ¶40). The CDV was sustained, but the DHO, Julie Smith, amended it to a violation of Rule 41.1 (institutional rules). (DSUMF, ¶41). On December 18, 2014, Edwards filed an IRR against Ford for depriving him of his Federal and State constitutional rights by being denied access to the courts. (DSUMF, ¶42). Edwards' IRR was denied and he was reminded that each IRR is limited to one grievable issue. (DSUMF, ¶43). On January 29, 2015, Edwards filed an Offender Grievance that requested a review of Edwards' complaint against Ford. The Warden responded to Edwards' Grievance as follows:

> Information received concerning the above subject indicates the following: A review of the documentation indicates you are now assigned to HU#9 and assigned as a dorm worker. As to your complaint that COII Ford has deprived you of your right to access to the courts, I find no evidence to support this claim. You do not have a current Medical Lay-In that would prevent you from working in Food Service. You have failed to provide any evidence that HU#6 staff has violated your rights or acted unprofessionally.

(DSUMF, ¶45). On March 19, 2015, Edwards filed a Grievance Appeal. (DSUMF, ¶46). Edwards stated that he had a medical lay-in that specified janitorial services restrictions. (DSUMF, ¶47). Edwards did not present any evidence of any wrongdoing by Ford, and Edwards' Grievance Appeal was denied. (DSUMF, ¶48). On January 14, 2015, Corrections Officer Terry Snow issued a CDV to Edwards for being in possession of contraband, a violation of Rule 24.6. (DSUMF, ¶49). Ford was the interviewing officer that attempted to resolve the IRR. (DSUMF, ¶50). Edwards was found guilty of the conduct violation. (DSUMF, ¶51). On January 20, 2015, Edwards filed an IRR against Ford, Corrections Officer I Snow and Corrections Officers Dunn. (DSUMF, ¶52). In response to the IRR, it was noted that Ford had not ordered that the CDV be issued. The IRR was denied because there was no evidence to indicate that Ford ordered the staff to issue violations to Edwards. (DSUMF, ¶53). On March

10, 2015, Edwards filed his Offender Grievance related to his January 20, 2015 IRR. (DSUMF, ¶54). The Warden responded to the Offender Grievance and found Edwards was not targeted or harassed. Rather, Edwards was placed in Housing Unit 5 (administrative segregation) because of Edwards' own actions. Edwards' grievance was denied. (DSUMF, ¶55). On April 20, 2015, Edwards filed a grievance appeal that was denied for the reasons previously stated. (DSUMF, ¶56).

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e);

*Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## B. Retaliation

In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, Edwards must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir.2002)); *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); *Lewis v. Jacks*, 486 F.3d 1025, 1028–29 (8th Cir. 2007). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis*, 486 F.3d at 1029 (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.1994)). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir.2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206–07 (8th Cir.1990)); *Spencer*, 738 F.3d at 911. "With regard to the third

element, '[m]erely alleging that an act was retaliatory is insufficient.'" *Martin v. Hurley*, No. 2:13-CV-00048-SPM, 2015 WL 6750808, at *7 (E.D. Mo. Nov. 5, 2015) (citing *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007)). Instead, Edwards must show that, "but for a retaliatory motive," Defendants would not have subjected him to adverse actions. *Martin*, 2015 WL 6750808, at *7.

In the first instance, Edwards alleges that Dashner and Ford have been conspiring and retaliating against him for many grievances against them. Edwards' grievances are protected activity. Edwards, however, cannot show that Defendants were motivated to take adverse action against Edwards because of their retaliatory motive or that such adverse actions would have chilled a person of ordinary firmness from continuing in the activity.

Edwards claims that Dashner issued a CDV against him in retaliation for his filing a grievance. (DSUMF, ¶10). Dashner, however, did not know at that time that Edwards had filed any grievances against her. (DSUMF, ¶18). Therefore, the Court holds that Edwards has failed to show any causal connection between the filing of his grievance and the allegedly retaliatory action by Dasher. Merely alleging that an action is retaliatory is insufficient. *Martin*, 2015 WL 6750808, at *7. The Court grants summary judgment in favor of Dashner regarding this incident.

Edwards also alleges that Dashner conspired with another officer to reassess him under AIRA. Edwards was reassessed by Correctional Case Manager II Baxley after MDOC replaced the PREA assessment with AIRA. (DSUMF, ¶¶24-25). All of the case managers were instructed to evaluate offenders using the AIRA classifications. (DSUMF, ¶26). Dashner was not involved in this process and did not direct anyone to reevaluate Edwards. (DSUMF, ¶27).

The Court holds that Edwards' retaliation claim fails as a matter of law on this basis and grants summary judgment in favor of Dashner.

Edwards also alleges retaliation against Ford. Edwards also asserts that a ball cap was removed from his cell in retaliation for a grievance filed by Edwards. Corrections Officer I Goodson removed Edwards' ball cap from his cell. (DSUMF, ¶34). Officer Goodson issued a CDV to Edwards. However, Goodson later returned the cap to Edwards after it was determined the cap was allowed property. (DSUMF, ¶36). Edwards filed an IRR asserting retaliation regarding this issue. Edwards did not mention retaliation in his Offender Grievance and he did not file a Grievance Appeal. (DSUMF, ¶¶37-39). The Court holds that Edwards failed to exhausted his administrative remedies as to this claim. Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). The Court holds that Edwards did not take all of the steps of the grievance process against Ford to properly preserve his claim for retaliation. Edwards has not exhausted his administrative remedies regarding this alleged act of retaliation and the Court grants summary judgment in favor of Ford on this claim.

Ford issued a CDV to Edwards on December 18, 2014 for violating Rule 19.4 (engaging in conduct that interferes with normal operations), Rule 20.1 (failing to comply with a written or verbal order or instruction), and Rule 30.3 (not being in the area where assigned or directed) when he failed to report to his appointment with the grievance officer. (DSUMF, ¶40). Edwards

was found guilty of this CDV. (DSUMF, ¶41). On December 18, 2014, Edwards also filed an IRR alleging that Ford prevented him from meeting with the Grievance Officer at FCC. Edwards further alleged that Ford had Edwards fired from his job as a dorm worker. (DSUMF, ¶42). During the grievance process, it was noted that Edwards was assigned as a dorm worker in a different housing unit and there was no evidence that Ford denied him access to the courts. (DSUMF, ¶45). On the appeal of the grievance, it was determined that Edwards did not present evidence of Ford denying him access to the courts. (DSUMF, ¶46-48). The Court holds that Edwards has not presented any evidence that Ford engaged in retaliation. Rather, throughout the process it was determined that Edwards was permitted access to the courts, even after filing his IRR. Therefore, the Court grants summary judgment in Ford's favor.

On January 14, 2015, Edwards was given a CDV by Corrections Officer I Snow for being in possession of contraband. (DSUMF, ¶49). Ford attempted to resolve this CDV but was otherwise uninvolved in this grievance. (DSUMF, ¶50). Edwards has presented no evidence, other than his own allegations, that anyone conspired or retaliated against Edwards. (DSUMF, ¶¶52-56). The Court grants summary judgment in Ford's favor given the complete lack of any evidentiary support for Ford's retaliatory motives or any retaliation taken against Edwards.

In sum, the Court holds that Edwards failed to demonstrate any issue of fact exists with respect to his retaliation claims under Section 1983. The evidence before the Court indicates that, although Edwards was issued conduct violations, these violations were supported by the record and no evidence of retaliatory animus existed. Therefore, the Court grants summary judgment in favor of Defendants.

**C. Equal Protection**

"To establish a violation of the Equal Protection Clause, however, [Edwards] must show that he was treated differently than other persons who were 'in all relevant respects similarly situated.'" *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 798 (8th Cir. 2009) (quoting *Bills v. Dahm,* 32 F.3d 333, 335 (8th Cir.1994)). "[U]nequal treatment of persons who are 'entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (quoting *Batra v. Bd. of Regents,* 79 F.3d 717, 721 (8th Cir.1996)). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with evidence that similarly situated inmates were treated differently." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (citing *Giles v. Henry,* 841 F.Supp. 270, 274–76 (S.D. Iowa 1993)).

Here, Edwards alleged in his November 2014 Offender Grievance against Dashner that she was issuing CDVs to him because "[s]he is white and I am black, which poses-cultural [sic] distances/differences, separate realities, visible/invisible barricades that places whites and blacks on the opposite side of the racial spectrum." (DSUMF, ¶30). The Court construes this statement as Edwards' attempt at stating a claim for violation of the Equal Protection Clause of the Fourteenth Amendment.

The Court holds that Edwards has failed to make a showing that he was treated differently than other similarly situated inmates. Edwards made a conclusory statement that his and Dashner's racial disparities affected their relationship. This fails to state an Equal Protection claim under the Fourteenth Amendment and the Court grants summary judgment in Defendants' favor.

### D. Qualified Immunity

"In a § 1983 action, state actors may be entitled to qualified immunity." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (*quoting Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008)); *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 579 (8th Cir. 2009). Qualified immunity is "'*immunity from suit* rather than a mere defense to liability.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806) (emphasis in original); *Robbins v. Becker*, 715 F.3d 691, 693 (8th Cir. 2013). "Qualified immunity shields government actors from suit unless their conduct violates clearly established constitutional or statutory rights that a reasonable person would have known." *Smith*, 586 F.3d at 580 (citing *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006), *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). This court may first address either prong. *Id.* (*citing Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).

The Court finds that Defendants' actions did not violate clearly established constitutional law of which a reasonable person would have known. No one prevented Edwards from asserting his First Amendment rights by filing grievances and he has presented no evidence that anyone retaliated against him for filing those grievances. Likewise, Edwards has provided no evidence that he was treated differently from any other offender because of his race. As a result, the Court holds that Defendants are entitled to summary judgment and are further entitled to qualified immunity on the separate issues outlined above.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 182) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 17th day of November, 2017.

                                                                           **RONNIE L. WHITE**
                                                                           **UNITED STATES DISTRICT JUDGE**